## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAMES R. RANDALL, RONALD J.
ROMERO, STANLEY HUTCHINSON,
RANELL A. GARCIA, ALBERT V.
VOGEL, SARAH C. McMAHON, MARK C.
LEACHMAN, JUDITH L. LOVDOKKEN,
and KENNETH R. KYLER,

                Plaintiffs,                             Civ. No. 00-349 MV/RHS

vs.

GALE NORTON, Secretary of the Interior,
and JOSEPH F. ALSTON, Superintendent,
Grand Canyon National Park,

                Defendants,
and

GRAND CANYON RIVER OUTFITTERS
ASSOCIATION,

                Intervener.


## AMENDED MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for

Mootness **[Doc. No. 37]** and Memorandum in support thereof **[Doc. No. 38]**, filed February 1,

2002.  The Court, having considered the motion, briefs, relevant law and being otherwise fully

informed, finds that the motion is not well-taken and will be **DENIED.**

### BACKGROUND

Plaintiffs are individuals on the waiting list for noncommercial boaters seeking use permits

for the Colorado River corridor in the Grand Canyon (River corridor).  On March 9, 2000,

Plaintiffs filed a Complaint for Judicial Review of Administrative Action **[Doc. No. 1]** seeking

declaratory, injunctive and mandamus relief against the Secretary of the Interior and the Superintendent of Grand Canyon National Park (Park).  Plaintiffs essentially allege that Defendants have promulgated arbitrary and capricious rules and regulations governing the allocation of use of the Colorado River in the Grand Canyon.  In particular, Plaintiffs allege that both the actual allocation and method of determining allocation of river use between commercial and noncommercial users, constitute an abuse of discretion and violate 16 U.S.C. §§ 1a-2 and 3, Park plans and procedures, and Plaintiffs' due process rights.  Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1361 (mandamus), and 2201 (declaratory judgment); 16 U.S.C. §§ 1a-2(h) and 3 (Secretary of Interior's authorization with respect to National Parks Service); the due process clause of the Fifth Amendment; and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 *et. seq.*

Plaintiffs seek the following remedies:  (a) a judgment that the regulations concerning boating on the River corridor and those allocating use between commercial and noncommercial users are arbitrary and capricious (in that they are based on data over twenty years old) and that the failure and refusal to modify or adjust these regulations is arbitrary, capricious and an abuse of discretion (Count I); (b) an injunction against Defendants' interference with Plaintiffs' free access to the "natural curiosities and wonders" of the Park, as caused by Defendants' inequitable and out-dated allocation of use between commercial and noncommercial users (Count II); (c) an injunction compelling Defendants to adjust or modify the allocation of use between commercial and noncommercial users within a reasonable time not to exceed sixty days (Counts III & IV); (d) a judgment the summer high season is to be defined the same for commercial and noncommercial users and that noncommercial users are to have full use of their allocation for the summer high season (Count V); and (e) an injunction preventing Defendants from negotiating, entering into

contracts, or renewing contracts with commercial users until the issue of use allocation has been adjusted in a fair and equitable manner, based on the most recent data concerning demand for commercial and noncommercial use (Count VI).

Defendants filed an Answer to Plaintiff's Complaint **[Doc. No. 8]** on May 4, 2000, seeking dismissal of Plaintiffs' Complaint and denial of the relief requested.  On May 18, 2000, third party Grand Canyon River Outfitters Association (GCROA) filed a Motion to Intervene as Defendant **[Doc. No. 11 & 12]**, which the Court granted **[Doc. No. 16]**.  Plaintiffs subsequently filed a Brief in Support of Petition for Judicial Review **[Doc. No. 27]**, and Defendants filed a Response Brief on the Merits **[Doc. No. 33 & 34]**.

On February 1, 2002, Defendants Gale Norton and Joseph Alston moved to dismiss Plaintiffs' Complaint as moot.  This Court held a hearing on June 11, 2003, at which time the parties also addressed whether the relevant statute of limitations on Plaintiffs' claims had run.

## DISCUSSION

### A.   Mootness

Defendants' motion to dismiss for mootness is based on a settlement agreement reached in separate litigation, *Grand Canyon Private Boaters Association v. Alston*, No. CIV 00-1277 PCT-PGR-TSZ (D. Ariz. 2000).  In *Grand Canyon Private Boaters Association* (*GCPBA*), plaintiffs (distinct from those in the present case) sued the National Parks Service (NPS) and various Department of Interior officials, alleging that the former NPS Superintendent's cessation of work related to development of the Park's Wilderness Management Plan and review of the Park's 1989 Colorado River Management Plan violated various federal laws and policies. (See *GCPBA* First Amended Complaint.)  The *GCPBA* plaintiffs requested declaratory, injunctive and mandamus relief to bring the *GCPBA* defendants into compliance with the applicable federal

statutes, regulations and policies.  As in the case at bar, GCROA intervened as defendants in the

*GCPBA* litigation.  In May 2001, parties to the *GCPBA* litigation entered into settlement

negotiations and reached an agreement that since has been filed with the District Court of Arizona

and has led to dismissal of that case.

　　　　Under the *GCPBA* settlement agreement, NPS, the Department of the Interior, Secretary

of Interior Gale Norton, NPS Director Fran P. Mainella, and Park Superintendent Joseph Alston

(collectively, Service) agreed, among other things, to

> initiate planning efforts to update the Park's Colorado River Management Plan
> (hereinafter "CRMP") of 1989.  In connection with this planning process, the
> Service will prepare appropriate environmental documentation consistent with the
> National Environmental Policy Act of 1969.  The Service will host one public
> scoping meeting and one public meeting to receive comments on the draft revised
> river management plan in, at a minimum, each of the following four cities:
> Flagstaff, Phoenix, Salt Lake City, and Denver.

Settlement Agreement at ¶1A.

　　　　The settlement agreement further stipulates that "during the CRMP planning process, the

Service will consult as appropriate with other individuals and entities," Settlement Agreement at

¶1B, and

> ...will consider, among other things:
>
> i.  the appropriate level of visitor use on the Colorado River consistent with
> resource protection and visitor experience goals;
> ii.  the allocation of use of the Colorado River between commercial and non-
> commercial users, the allocation of use between different types of commercial
> users (e.g., between motorized and non-motorized trips), and alternatives to the
> current system of commercial/non-commercial allocation;
> ...

Settlement Agreement at ¶1C.

　　　　The Service also agrees to release a National Environmental Policy Act (NEPA)

compliance document "[i]n connection with the CRMP" by December 31, 2004.  Settlement

Agreement at ¶1D.  The Settlement Agreement allows the Service to extent the "current river outfitters' concession contracts for up to a total of three years from the current expiration date of those contracts, which is December 31, 2002."  Settlement Agreement at ¶1E.

Under the terms of the settlement agreement, starting with the 2001 primary season and continuing through the 2004-2005 secondary season, Defendant-Intervenor GCROA agreed to notify the Service, within five business days after the end of the primary season, "of the number of unused user-days from the commercial, primary-season user-day allocation, if any," and the Service "agree[d] to make such unused user-days available for noncommercial access" during the secondary season.  Settlement Agreement at ¶1H.

The Settlement Agreement was to take effect once the *GCPBA* plaintiffs' complaint was dismissed by the court.  The dismissal was to be without prejudice, with the understanding that, until December 31, 2004, the *GCPBA* plaintiffs could refile their claims concerning management of the River corridor only if the federal defendants violated terms of the settlement.  Settlement Agreement at ¶6.

Defendants in the case at bar argue that, because of the similarity of issues raised in the two cases, the terms of the *GCPBA* settlement agreement render Plaintiffs' lawsuit moot and accordingly request dismissal of the Complaint.

Determination of whether issues raised in litigation are moot is a threshold inquiry for federal courts "because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Out of Line Sports, Inc. v. Rollerblade, Inc.*, 213 F.3d 500, 501 (10th Cir. 2000) (quotations and citation omitted).  Article III's "case or controversy" requirement has been interpreted as to prohibit a federal court from rendering "opinions upon moot questions or abstract propositions, or [declaring] principles or rules of law which cannot

affect the matter in issue in the case before it." *Church of Scientology of Calif. v. United States*,
506 U.S. 9, 12 (1992). Therefore, "[t]he controversy must exist at all stages of the proceedings,"
and a party seeking relief must request a remedy "capable of addressing the alleged harm." *Nat'l
Advertising Co. v. City & County of Denver*, 912 F.2d 405, 411 (10th Cir. 1990) (quotations and
citation omitted).

     "If an event occurs while a case is pending that heals the injury and only prospective relief
has been sought, the case must be dismissed." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d
724, 727 (10th Cir. 1997) (citing *Fund for Animals v. Babbit*, 89 F.3d 128, 133 (2d Cir. 1996)).
Stated otherwise, dismissal for mootness is warranted when "the issues presented are no longer
'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395
U.S. 486, 496 (1969). However, "the conditions under which a suit will be found constitutionally
moot are stringent." *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th
Cir. 1993). A suit that was commenced properly is not rendered moot if "[i]ntervening events
have not '*irrevocably eradicated* the effects of the alleged violation.'" *City of Los Angeles v.
Lyons*, 461 U.S. 95, 101 (1983) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631
(1979)).

     Defendants in the present case argue that, under the terms of the *GCPBA* settlement
agreement, they "have committed to undertaking the 'careful and thorough analysis' necessary to
update the CRMP," under applicable federal laws. (Defs.' Mem. at 7.) Without such an analysis,
Defendants contend that any changes made in the allocation of user permits for the River corridor
could be challenged as arbitrary and capricious under the Administrative Procedures Act or as
inconsistent with the procedural mandates of the National Environmental Policy Act of 1969 and
the National Historic Preservation Act of 1966. Defendants emphasize that the NPS must take

into consideration the interests and "rights" of a wide range of individuals and groups in its management of the Colorado River corridor, and not just those of the nine plaintiffs represented in the present suit. Thus they request dismissal of Plaintiffs' Complaint for mootness because they have already "committed to doing as much as this court could order" if Plaintiffs were to prevail on their claims. (Defs.' Mem. at 7.)

However, Plaintiffs do not seek to displace whatever proceedings will or already are taking place pursuant to the *GCPBA* settlement agreement. By permitting Plaintiffs to continue with their litigation, it is not apparent to the Court how Defendants will be precluded from continuing to fulfill its obligations to the plaintiffs in the *GCPBA* case, as set out in that settlement agreement.

Moreover, although Defendants attempt to argue that by entering into the *GCPBA* settlement agreement, they have voluntarily ceased the activity challenged by Plaintiffs, the Court finds that the controversy in the present case continues to exist. The general rule is that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (quotations and citation omitted). However, voluntary cessation will render a case moot if, "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 631 (quotations and citations omitted); *see also City of Albuquerque v. Bowner*, 97 F.3d 415, 420 (10th Cir. 1996). Defendants' burden in such a case is a heavy one, and their evidence "must be weighed against the possibility of recurrence and the public interest in having the case decided." *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)). Meanwhile,

the party seeking the injunctive relief "must satisfy the court that relief is needed, that there is some cognizable danger of recurrent violation" before a court may issue an injunction once the allegedly unlawful conduct has terminated. *Id.* (quotations and citation omitted).

The Court finds that the intervening event in the present case has not "irrevocably eradicated" the effects of the policy and actions challenged by Plaintiffs. Plaintiffs and Defendants still disagree about the legality of the allocation of use between commercial and noncommercial users, as well as the way in which those numbers are calculated. Relatedly, Defendants have not rescinded or otherwise changed the regulations pertaining to permit allocation, and the injury upon which Plaintiffs' claims are based – the denial, even if temporary, of permits – is still in existence. In other words, Plaintiffs continue to have a legally cognizable interest in the outcome of this case, notwithstanding the settlement agreement entered into by Defendants in the *GCPBA* litigation.

In fact, dismissal of Plaintiffs' Complaint may make it impossible for Plaintiffs to seek redress for the harms alleged. Should Defendants fail to meet its obligations under the *GCPBA* settlement agreement in a timely manner or should Defendants' efforts pursuant to that agreement ultimately fail to address the issues raised by Plaintiffs here, Plaintiffs would only be able to pursue their claims if they are not time-barred by the applicable statute of limitations. In part, Defendants already contend that Plaintiffs' claims are so barred. Although the Court finds that Plaintiffs' Complaint falls well within the authorized time period for bringing such claims at the present time, *see discussion infra*, there is no guarantee that Plaintiffs will not be barred from seeking redress in the future. Accordingly, the Court concludes that dismissal for mootness is precluded because Plaintiffs' alleged harms are on-going and not yet resolved by the *GCPBA* settlement agreement.

**B.**     ***Statute of Limitations***

Suits requesting judicial review of agency action typically are governed by the six-year statute of limitations provided at 28 U.S.C. § 2401(a).  *See, e.g., Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986).  In pertinent part, Section 2401 states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  In the course of addressing comparable language in another statute of limitations, the Supreme Court has emphasized its refusal to "define for all purposes when a 'cause of action' first 'accrues,'" explaining that, "[s]uch words are to be 'interpreted in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought.'"  *Crown Coat Front Co., Inc. v. United States*, 386 U.S. 503, 517 (1967) (citation omitted); *see also Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 n.2 (10th Cir. 1993) (quoting *Crown Coat Front Co.*).  The statute of limitations governing a claim seeking judicial review of administrative action is triggered by "final agency action," as contemplated by the APA, 5 U.S.C. § 704.  *See, e.g., S. Utah Wilderness Alliance v. Norton*, 301 F.3d 1217, 1232 (10th Cir. 2002).

Defendants argue that Plaintiffs' claims are time-barred under 28 U.S.C. § 2401(a).  Defendants construe Plaintiffs' Complaint as raising "policy-based challenges to the allocations in the 1981 and 1989 CRMP [Colorado River Management Plan]," since "Plaintiffs assert that the allocations are unfair and inequitable to non-commercial river rafters."  (Defs.' Resp. Br. at 19.)  More specifically, Defendants read Plaintiffs' Complaint as a challenge to the regulations at 36 CFR § 7.4(b) which, in relevant part, states as follows:

(b) Colorado whitewater boat trips.  The following regulations shall apply to all persons using the waters of, or Federally owned land administered by the National

Park Service, along the Colorado River within Grand Canyon National Park, upstream from Diamond Creek at approximately river mile 226:

...

(3) No person shall conduct, lead, or guide a river trip unless such person possesses a permit issued by the Superintendent, Grand Canyon National Park.  The National Park Service reserves the right to limit the number of such permits issued, or the number of persons traveling on trips authorized by such permits when, in the opinion of the National Park Service, such limitations are necessary in the interest of public safety or protection of the ecological and environmental values of the area.

(i) The Superintendent shall issue a permit upon a determination that the person leading, guiding, or conducting a river trip is experienced in running rivers in white water navigation of similar difficulty, and possesses appropriate equipment, which is identified in the terms and conditions of the permit.

(ii) No person shall conduct, lead, guide, or outfit a commercial river trip without first securing the above permit and possessing an additional permit authorizing the conduct of a commercial or business activity in the park.

36 CFR § 7.4(b).

This provision went into effect on January 8, 1972, and the allocation of permits between commercial and noncommercial river users was announced in the 1981 CRMP (which was later incorporated into the 1989 CRMP).  Notice of the 1989 CRMP was published in the Federal Register on January 19, 1990.  Invoking the six-year statute of limitations, Defendants argue Plaintiffs' claims "should be dismissed as untimely to the extent they directly or indirectly raise such challenges to the provisions of the 1972 regulations and the 1981 and 1989 plans."  (Defs.' Resp. Br. at 20.)

Plaintiffs offer two arguments in response.  They stress, first, that they are not challenging the regulations at 36 CFR § 7.4(b) and, second, that their challenges to the allocation scheme set forth in the 1981 and 1989 CRMPs are not barred by the statute of limitations, under governing caselaw.  As to the first assertion, Plaintiffs emphasize that they nowhere cite 36 CFR § 7.4(b) in their briefs and that therefore, they are not challenging that regulation.  As for their second argument, Plaintiffs point out that, in many of the cases cited by Defendant, the courts have

recognized an exception for "applied challenges" to the six-year statute of limitations in 28 U.S.C.

§ 2401(a).

Indeed, the complete passage from one of the cases quoted by Defendants reads as

follows:

> If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision.  Similarly, if the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years of the decision. ...
>
> *If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger.*  Such challenges, by their nature, will often require a more "interested" person than generally will be found in the public at large.
> ...
> We hold that a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger. ... The right to bring a civil suit challenging an agency action accrues "upon the completion of the administrative proceedings." [*Crown Coat Front Co. v. United States*, 386 U.S. 503, 511 (1967).]

*Wind River Mining Corp. v. United States*, 946 F.2d 710, 715, 716 (9th Cir. 1991).

Relying in part on *Wind River Mining*, the Fifth Circuit has held that

> On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register.  ...  It is possible, however, to challenge a regulation after the limitations period has expired, provided that the ground for the challenge is that the issuing agency exceeded its constitutional or statutory authority.  To sustain such a challenge, however, the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit.

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Svc.*, 112 F.3d 1283, 1287 (5th Cir. 1997)

This distinction between claims challenging agency procedure on their face and those

challenging the application of agency rules or procedures to a particular individual has been

invoked by the Tenth Circuit as well.  In *Smith v. Marsh*, the Tenth Circuit Court of Appeals

concluded that a plaintiff's direct challenge to his dishonorable discharge in 1972 was time-barred because he failed to file a judicial action until 1984. *Smith v. Marsh*, 787 F.2d 510, 511 (10th Cir. 1986). Nevertheless, the court found that the plaintiff's claim challenging the administrative review of his discharge, also filed in 1984, was not time-barred because that claim accrued in 1983 -- the year the reviewing agency rendered its final decision. *Id.* at 512.

Thus, whether the statute of limitations bars Plaintiffs' suit in the present case turns on the nature of Plaintiffs' claims. Plaintiffs seek review not of the original regulations in the abstract, but the continued application and enforcement of those regulations against their applications for noncommercial use permits. That is, their challenge is not to the administrative policy in general, but to the application and impact of those administrative rules to their particular requests for permits. Furthermore, to the extent that Plaintiffs' Complaint challenges the allocation of use, this claim is based not only on the impact of those allocation provisions on Plaintiffs' personal requests for permits, but also on two actions taken in February 2000 -- namely, the Superintendent's decision to not update those provisions and the agency's decision to adopt the 1989 plan as operative. The Tenth Circuit has made clear that plaintiffs may challenge such agency "inaction," so long as it constitutes final, reviewable agency action as contemplated by the APA.[1] *See, e.g., Gordon v. Norton*, 322 F.3d 1213 (10th Cir. 2003); *Coalition for Sustainable Res., Inc. v. United States Forest Svc.*, 259 F.3d 1244 (10th Cir. 2001).

---

[1] The Court does not decide here whether Plaintiffs' challenge to Defendants' decisions in 2000 are in fact final, reviewable agency actions under the APA, but only that it is possible to bring suit against agency decisions that resemble administrative inaction.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Mootness

**[Doc. No. 37]** and Memorandum in support thereof **[Doc. No. 38]**, filed February 1, 2002 is

hereby **DENIED.**

Dated this 19th day of August 2003.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:
John Wells
Attorney for Defendants:
Raymond Hamilton
John W. Zavitz

Attorney for Defendant-Intervener:
Susan M. Hapka
Sam Kalen